IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Robert Alan Berkowitz, ) | |
| ) | Civil Action No. 8:09-651-HMH-KFM |
| Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| United States of America, et al., ) | |
| ) | |
| Respondents. ) | |

This matter is before the court on the United States of America's renewed[1] motion for summary denial and partial dismissal of the amended petition to quash (doc. 94) and the petitioner's motion to strike the affidavit of Deborah O. Reynolds (doc. 100). The petitioner, who is proceeding *pro se*, filed an amended complaint/petition to quash summonses issued to third-parties (docs. 8, 15) in connection with a civil income tax investigation.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(e) D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

The summonses at issue stem from the petitioner's failure to file federal income tax returns for tax years 2002 through 2007 (Debbie Reynolds decl. ¶¶ 4, 5). In order to determine the petitioner's tax liability for those periods, Revenue Agent Deborah O. Reynolds conducted a search to identify third-parties that may possess records containing financial information related to the petitioner (*id.* at ¶ 7). Based upon that

---

[1] The United States has styled its motion as a "renewed" motion for summary denial and partial dismissal. In its "opposition to amended petition to quash" (doc. 57) filed on October 22, 2009, the United States did argue that the petition should be summarily denied. However, this document was not filed as a motion and was not construed as such by the court.

search, Agent Reynolds determined that certain entities (collectively the "Third-Party Record Keepers") were likely to possess financial information relevant to her examination of the petitioner's federal tax liabilities for tax years 2002 through 2007 (*id*. at ¶ 7).

On February 26, 2008 – before contacting any of the Third-Party Record Keepers – Agent Reynolds sent a letter to the petitioner informing him that she intended to contact third-parties in order to determine his unpaid tax liabilities (*id*. at ¶ 6). In that letter, Agent Reynolds gave the petitioner a final opportunity to cooperate in the examination of his tax liabilities, stating "we urge you to contact us by close of business on March 10, 2008" (*id*.). The petitioner, however, did not contact Agent Reynolds (*id*.).

Accordingly, Agent Reynolds issued Internal Revenue Service ("IRS") summonses (Form 2039) to the Third-Party Record Keepers on March 6 and March 12, 2009 (*id*. at ¶ 8). The summonses directed each Third-Party Record Keeper to produce for examination certain books, papers, records or other data as described in the summons on April 15, 2009 at 10:00 a.m. (*id.*). As explained in Agent Reynolds' declaration, the books, papers, records, and other data described in the summonses are relevant to the examination of the petitioner's federal tax liabilities for tax years 2002 through 2007 and were not already in the possession of the IRS at the time that the summonses were issued (*id*. at ¶¶ 9-13, 18). Agent Reynolds further stated in her declaration that all administrative steps required by the Internal Revenue Code to issue and serve the summonses have been taken, and there is no "Justice Department referral" in effect with respect to the petitioner for tax years 2002 through 2007, as that term is defined in Title 26, United States Code, Section 7602(d) (*id*. at ¶¶ 14, 15).

Following the issuance by Agent Reynolds of the summonses at issue, the petitioner filed this proceeding to quash those summonses. On May 8, 2009, the United States filed a motion to dismiss the petition against certain respondents based on a lack of subject matter jurisdiction. By order filed May 11, 2009, pursuant to *Roseboro v. Garrison*,

528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The petitioner filed a response on June 10, 2009, the United States filed a reply on June 22, 2009, and the petitioner filed a sur-reply on June 30, 2009.

On October 13, 2009, the Honorable Henry M. Herlong, Jr., Senior United States District Judge, issued an order granting in part and denying in part the United States' motion. Judge Herlong found that the court lacked subject matter jurisdiction and dismissed the amended petition to the extent that it sought to quash summonses issued to DF Services, LLC; Chase Paymentech; HPSC, Inc.; Great American Leasing Corporation; First Data Merchant Services Corporation; National Technology Leasing Corporation; CareCredit, Inc.; and Elavon, Inc. Judge Herlong found that respondent Patterson Dental Supply, Inc., has a physical presence in South Carolina and thus is "found" in the state, and therefore the court has subject matter jurisdiction as to that respondent. On November 3, 2009, Judge Herlong denied the petitioner's motion for reconsideration. Thereafter, the petitioner appealed Judge Herlong's partial grant of the motion to dismiss and the denial of his motion for reconsideration. The Fourth Circuit Court of Appeals dismissed the appeal for lack of jurisdiction. Based upon the foregoing, all that remains at issue are the summonses issued to the following Third-Party Record Keepers:

(a) Fifth Third Bank Operations

(b) Bank of America

(c) Global Payments Inc.

(d) National Processing Company

(e) Total System Services Inc. (Barton R. "Chip" Bright (III))

(f) Patterson Dental Supply Inc.

(g) Metropolitan Life Insurance Co.

(h) Delta Dental Plan of Missouri.

(i) Blue Cross and Blue Shield of S.C.,

(j) City of Anderson

(k) CIGNA Healthcare Benefits Inc.

(l) Wachovia Bank, N.A.

(m) Bank of Anderson

On July 1, 2011, the United States filed its renewed motion for summary denial and partial dismissal of the amended petition to quash. By order filed that same day pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The petitioner filed a response on August 5, 2011. The petitioner also filed a motion to strike the declaration of Agent Reynolds on that date. The United States filed its response in opposition to the motion to strike on August 22, 2011.

***Motion to Strike***

The petitioner has moved to strike the declaration of Agent Reynolds on the grounds that it is inconsistent with the Internal Revenue Code and with positions taken by counsel for the United States, it contains contradictions and even "blatant lies," and is inadmissible under the rules of evidence. This court finds that none of these grounds have merit, and therefore the motion is denied.

The petitioner first challenges Agent Reynolds' declaration on the grounds that it is inconsistent with Section 7602 of the Internal Revenue Code. *See* 26 U.S.C. § 7602. Specifically, he claims that Agent Reynolds lacked authority to issues the summonses, in part because the authorization contained in Section 7602 mentions only the Secretary of the Treasury. Contrary to the petitioner's assertions, however, it is well settled that the authority to issue summonses pursuant to Section 7602(a) has been delegated to IRS

agents. *See, e.g., United States v. Derr*, 968 F.2d 943, 947 (9th Cir. 1992) (rejecting argument that IRS agents did not have delegated authority to issue summonses).[2]

The petitioner's second challenge to the declaration is that Agent Reynolds' statement that her investigation is being conducted pursuant to 26 U.S.C. § 6020(b) is inconsistent with the position taken by the United States in this case. As argued by the United States, it is evident from reviewing the text of Section 6020(b), however, that there is no inconsistency. If a taxpayer fails to file a return required by the Internal Revenue Code, Section 6020(b) authorizes the Secretary to "make such return from his own knowledge and from such information as he can obtain through testimony or otherwise." Section 7602 is the statutory authority to obtain the information needed to determine the liability of a taxpayer who has not complied with his or her filing requirement. 26 U.S.C. § 7602(a). The petitioner's argument otherwise is meritless.

The petitioner next asserts that Agent Reynolds' declaration is self-contradictory because it states that the petitioner failed to file tax returns for the 2005 and 2006 tax years despite the fact that he filed documents that purport to be returns for those years. As explained in Agent Reynolds' declaration, however, the documents filed by the petitioner in 2005 and 2006 lacked sufficient data to calculate the petitioner's tax liability and do not represent an honest and reasonable attempt to satisfy the requirements of the tax law (Reynolds decl.¶ 5). Accordingly, the forms submitted by the petitioner for 2005 and 2006 are not "returns," and there is no contradiction. *In re Moroney*, 352 F.3d 902, 905 (4th Cir. 2003) ("[F]or a document to be considered a 'return,' under either the

---

[2]Specifically, the Secretary of the Treasury has delegated authority to issue summonses to the Commissioner of the IRS. 26 C.F.R. §§ 301.7602-1(b) (authorizing the Commissioner of the IRS to issue summonses under I.R.C. § 7602); *id.* §301.7701-9(b) (Treasury regulations authorizing the Commissioner to perform some function "shall constitute a delegation by the Secretary of the authority to perform such function"). The Secretary has authorized the Commissioner to redelegate this authority to IRS employees. *Id.* § 301.7701-9(c). The Commissioner has redelegated this authority to revenue agents, among others. Deleg. Order No. 4 (Rev. 22), 1997 WL 33479254 (delegating from Commissioner to various IRS employees, including revenue agents, the authority to issue summonses).

bankruptcy or the tax laws, it must (1) purport to be a return; (2) be executed under penalty of perjury; (3) contain sufficient data to allow calculation of tax; and (4) represent an honest and reasonable attempt to satisfy the requirements of the tax laws.").

Additionally, the petitioner alleges that Agent Reynolds' declaration contains "blatant lies" because, the petitioner asserts, the IRS did not take all administrative steps required by the Internal Revenue Code to issue and serve the summonses. In support of his assertion, the petitioner incorporates by reference the arguments contained in his other pleadings.

Specifically, the petitioner asserts that Agent Reynolds lacked the authority to issue the summonses (pet. reply at 6, doc. 65). As noted above, however, this claim is baseless. The authority to summons granted to the Secretary of the Treasury by Section 7602 has been delegated to IRS agents. Furthermore, contrary to the petitioner's assertion, Section 7602(c) does not require an IRS agent to receive authorization from a taxpayer before issuing summonses to third-parties. Rather, Section 7602(c) only requires that the taxpayer be given notice of the planned contact with third-parties, which was provided in this case by Agent Reynolds on February 26, 2008 (Reynolds decl. ¶ 6).

Furthermore, as argued by the government, the petitioner misinterprets Section 7609(c)(2)(D) to prohibit the IRS from issuing a summons "in aid of the collection of an assessment made." In fact, Section 7609(c)(2)(D) does not limit the IRS's authority to issue summonses, but rather limits the situations in which a taxpayer may challenge such a summons. Agent Reynold's declaration correctly states that "[a]ll administrative steps required by the Internal Revenue Code to issue and serve the summonses have been taken" (Reynolds decl. ¶ 14), as will be discussed more fully below. The petitioner fails to set forth any supporting facts to show otherwise, much less to establish that Agent Reynolds' statement constitutes a "blatant" lie.

6

Finally, the petitioner challenges Agent Reynolds' declaration on the grounds that it is inadmissible under the Federal Rules of Evidence. The petitioner cites no specific rules but argues that the declaration is inadmissible because it "has not been authenticated," "is not an original copy," and has not been notarized (pet. m. to strike at 3-4). The relevant case law holds that the United States may meet its burden to establish a *prima facie* case for the enforceability of a summons with only the affidavit of the agent who issued the summons. *Alphin v. United States*, 809 F.2d 236, 238 (4th Cir. 1987). Furthermore, 28 U.S.C. § 1746 envisions and authorizes the use of unsworn declarations in lieu of sworn affidavits in such instances:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
> . . .
> "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)."

28 U.S.C. § 1746. Agent Reynolds' declaration fully complies with that statute and has been proffered by the United States as provided for by the relevant case law.

Based upon the foregoing, the petitioner's motion to strike is denied.

***Subject Matter Jurisdiction***

The United States argues that the amended petition should be dismissed as to National Processing Company ("NPC") because the court lacks subject matter jurisdiction to consider it. The court's jurisdiction over petitions to quash third party summonses is governed by 26 U.S.C. § 7609(h). Section 7609(h)(1) confers jurisdiction to "[t]he United States district court for the district within which the person to be summoned resides or is found." Section 7609(h)(1) does not define "found," and this court has not located any case law from the Fourth Circuit Court of Appeals that interprets the word "found" as it relates to Section 7609(h)(1). However, courts that have examined the meaning of being "found" in a district have held that it requires a physical presence by the summonsed party. *See e.g., Cayman Nat. Bank, Ltd. v. United States*, No. 8:06-MC-50-T-24, 2007 WL 641176, at *3 (M.D. Fla. Feb. 26, 2007) (unpublished) ("While there is not a lot of case law [on § 7609(h)(1)] regarding what constitutes being 'found' within a district, this Court finds persuasive those cases that have addressed the issue and have required the actual physical presence of the summonsed party within the district in order for the summonsed party to be considered 'found' within the district."); *Williams v. United States*, No. 1:05-mc-6, 2005 WL 3105404, at *2 (E.D. Tenn. July 29, 2005) (unpublished) (finding that summonsed parties were not "found" within the district because they did not "maintain[] an actual physical presence within this Court's district"); *Oldham v. United States*, No. 01-1410HA, 2002 WL 850205, at *2 (D. Or. Mar. 21, 2002) (unpublished) (creating a "branch office test" that "requires a physical presence within the forum and is therefore consistent [with] the limited case law which requires something more than a Due Process analysis of minimum contacts.").

In support of its argument that NPC neither resides in nor is found in South Carolina, the United States provided the affidavit of Jason Meachum, the Manager in the Research Department of NPC. Mr. Meachum testified that the company is a Nebraska corporation with its principal place of business located in Kentucky. NPC is not registered

8

with the South Carolina Secretary of State and conducts all of its business with persons and entities located in South Carolina through offices located in Kentucky, Texas, and Illinois (Jason Meachum aff. ¶¶ 1-5). In his opposition to the United States' motion for summary denial, the petitioner does not address the argument that the court lacks subject matter jurisdiction as to NPC.

This court finds that NPC is not "found" in this state. Accordingly, the United States' motion to dismiss NPC for lack of subject matter jurisdiction should be granted.

***Summary Denial***

The United States argues that the court should summarily deny the amended petition to quash the IRS's summonses still at issue. This court agrees.

Section 7601 of the Internal Revenue Code requires the Secretary of the Treasury to "cause officers or employees of the Treasury Department to proceed, from time to time, through each internal revenue district and inquire after and concerning all persons therein who may be liable to pay any internal revenue tax." 26 U.S.C. § 7601. Section 7602 authorizes the Secretary to summon records and testimony for that purpose. Specifically, section 7602(a) authorizes the Secretary:

> For the purpose of ascertaining the correctness of any return, making a return where none has been made, [or] determining the liability of any person for any internal revenue tax . . . [t]o summon . . . any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax . . ., or any other person the Secretary may deem proper, to appear . . . and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry.

*Id.* § 7602. A summons issued under Section 7602(a) may be issued in connection with an inquiry into any offense connected with the administration or enforcement of the internal

revenue laws – including criminal offenses. *See* 26 U.S.C. § 7602(b); *Weiss v. Comm'r of Internal Revenue*, 919 F.2d 115, 115 n. 1 (9th Cir. 1990).

Section 7602 is the IRS's principal information-gathering authority, and, accordingly, the courts have construed it broadly in light of its intended purpose of furthering tax investigations. Thus, as argued by the government, the courts have repeatedly rejected attempts to circumscribe or thwart the effective exercise of the IRS's summons power. *See, e.g., United States v. Euge*, 444 U.S. 707, 715-16 (1980); *United States v. Bisceglia*, 420 U.S. 141, 150 (1975). The Supreme Court has cautioned against restricting the summons authority absent express legislative direction. *See Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 318 (1985).

Here, the United States does not seek judicial enforcement of the IRS summonses because it appears that most of the Third-Party Record Keepers have already complied with the summonses (*see* m. to dismiss at 6 n.5). Accordingly, the burden rests upon the party seeking to quash the summons "'to establish a valid defense to the summons.'" *Knauss v. United States*, 28 F.Supp.2d 1252, 1254 (S.D. Fla. 1998) (quoting *Cosme v. Internal Revenue Service*, 708 F.Supp. 45, 48 (E.D.N.Y. 1989)). Unless the party challenging the summons alleges specific facts in his pleadings, supported by affidavits, from which the court can infer a possibility of some wrongful conduct by the IRS, "the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing." *Alphin*, 809 F.2d at 238 (citations omitted).

The petitioner has failed to provide any specific facts, supported by affidavits, that meet his burden to provide the court with anything from which it can infer the possibility of wrongdoing on the part of the IRS. Furthermore, as argued by the United States, the petitioner is not entitled to engage in a discovery fishing expedition for evidence he believes might support his allegations. Discovery is rarely appropriate in summons cases because of its tendency to destroy the summary nature of the proceeding. *United States v. Will*, 671

F.2d 963, 968 (6th Cir. 1982). The court should limit discovery at this stage "to those cases where the taxpayer makes a preliminary and substantial demonstration of abuse." *Id.*; *see also Alphin*, 809 F.2d at 238. Here, the petitioner has not made even a preliminary demonstration of abuse, and thus discovery is not appropriate.

Furthermore, the evidence before the court shows that the IRS's summons authority was being used in good faith in this case. In determining the propriety of an IRS summons, courts consider the four factor test set forth in *United States v. Powell*, 379 U.S. 48, 57-58 (1964): whether (1) the investigation has a legitimate purpose; (2) the summoned materials are relevant to that purpose; (3) the information sought is not already within the IRS's possession; and, (4) the IRS followed the administrative steps required by the Internal Revenue Code. *Alphin*, 809 F.2d at 238. As argued by the United States, each of these factors demonstrates that the summonses at issue in this case are valid.

Here, the investigation has a legitimate purpose, and the summoned materials are relevant to that purpose. The petitioner alleges that the summonses were issued for an improper purpose because they are intended to aid in a criminal investigation of him. This argument is contrary to the facts and plainly without merit. As explained in the declaration of Agent Reynolds, the summonses were not issued for any criminal purpose, but rather to aid in her examination of the petitioner's federal income tax liabilities – an examination made necessary by the petitioner's failure to file federal income tax returns. The information requested in the summonses is directly related to that purpose. For example, each of the summonses requests information that may reflect income received by the petitioner during the tax periods at issue. Furthermore, regardless, a summons issued under Section 7602(a) may be issued in connection with an inquiry into any offense connected with the administration or enforcement of the internal revenue laws – including criminal offenses. *See* 26 U.S.C. § 7602(b); *Weiss*, 919 F.2d at 115 n. 1. Accordingly, even if the petitioner were correct that Agent Reynolds issued the summonses for the primary

purpose of inquiring into a criminal tax offense, her investigation would still be legitimate. *See Scotty's Contracting & Stone v. United States*, 326 F.3d 785, 789 (6th Cir. 2003) (citing cases from the 2nd, 3rd, 8th, 10th, and 11th circuits, that have held "that the IRS may validly issue a summons pursuant to 26 U.S.C. § 7602, as amended in 1982, for the sole purpose of a criminal investigation.").

Furthermore, the information sought was not already in the possession of the IRS when the summonses were issued. As explained in Agent Reynold's declaration, although most of the summoned parties have apparently complied with the summonses and produced the requested information, the information sought by the summonses was not in the possession of the IRS at the time that the summonses were issued. Furthermore, Agent Reynolds' declaration is supported by her letter of February 26, 2008, which demonstrates that the summonses were issued when the petitioner refused to assist Agent Reynolds in her examination, and she was forced to seek that information from third-parties (Reynolds decl., ex. N).

Lastly, it appears that the IRS followed the administrative steps required by the Internal Revenue Code. Section 7602(c) requires that the IRS provide a taxpayer with reasonable notice prior to contacting third-parties with respect to the determination of their tax liabilities. 26 U.S.C. § 7602(c). The record demonstrates that the petitioner was provided such notice by letter dated February 26, 2008 (Reynolds decl.¶ 6, ex. N). Similarly, the record reflects that the IRS complied with Section 7602(d) as there has been no Justice Department referral. *See* 26 U.S.C. 7602(d). Section 7603 provides for the manner in which an IRS summons should be served. *Id.* § 7603(b). As reflected on the Service of Summons, Notice, and Recordkeeper Certificates attached to the summonses, each of the summonses were properly served upon the Third-Party Record Keepers by certified or registered mail (Reynolds decl., ex. A-M). To the extent the petitioner argues that not all of the summonses were directed to third-party record keepers within the

meaning of Section 7603(b)(2) – and, thus, that these parties were entitled to personal service of the summonses as provided in Section 7603(a) – this argument must fail because the petitioner lacks standing to challenge the summonses on this ground. *See King v. United States*, 684 F.Supp. 1038, 1041 (D.Neb.1987) (defense that the third-party record keeper was not properly served cannot be raised by petitioner). With respect to Section 7609, the Service of Summons, Notice, and Recordkeeper Certificates attached to Agent Reynold's declaration (Reynolds decl., ex. A-M) reflect that Agent Reynolds provided notice of the summonses to the petitioner as required by Section 7609(a). *See* 26 U.S.C. § 7609(a).

Furthermore, even if the petitioner could demonstrate that the IRS failed to take some administrative step in issuing the summonses – and to this point he has not – his amended petition to quash should still be denied because any such violation was inconsequential in light of the totality of the circumstances. In determining whether the IRS's failure to follow every administrative step required by the Internal Revenue Code should invalidate a summons, courts generally consider "the totality of the circumstances, including the seriousness of the infringement, the harm or prejudice, if any, caused thereby, and the government's good faith." *Adamowicz v. United States*, 531 F.3d 151, 161 (2nd Cir. 2008). Here, any alleged failure by the IRS to follow all of the administrative steps required by the Internal Revenue Code would be insufficient to overcome the substantial record evidence of good faith on the part of the IRS.

The petitioner also argues that the summonses violate his Fifth Amendment constitutional right to avoid self-incrimination. That argument fails. In *Hanna v. U.S.*, the district court confronted a similar argument by a petitioner and found as follows:

> The court rejects that argument because the section 7602(b) amendment (authorizing issuance of summons even if the evidence uncovered might later serve as a basis for criminal prosecution of a taxpayer) was enacted with the express purpose to replace the former statute that disallowed

13

> service of summons used solely to aid criminal investigations. The addition of subsection (b) indicates Congress balanced the state interest in tax collection against the individual taxpayer's right to avoid potential self-incrimination and determined that, at the outset of an investigation into tax liability, the state interest carried greater weight than the taxpayer's interest. Where the congressional intent is manifest, the court is not disposed to question Congress' reasons for allowing this investigative means to the legitimate state end of determining the liability of an individual taxpayer. Moreover, a substantial body of caselaw holds that investigation of criminal violations of the Internal Revenue Code is a valid purpose for issuance of a summons under the statutes empowering the IRS to summon third-party recordkeepers for inquiry into a taxpayer's liability. *See e.g., Pickel v. United States*, 746 F.2d 176 (C.A.Pa.1984). Therefore, the court finds the summons was issued for a legitimate purpose and the issuance did not, as he contends, violate [the petitioner's] constitutional rights.

647 F.Supp. 590, 595-96 (D. Utah 1986). *See also U.S. v. Miller*, 425 U.S. 435, 444 (1976) (noting the "general rule that the issuance of a subpoena to a third party to obtain the records of that party does not violate the rights of a defendant, even if a criminal prosecution is contemplated at the time of the subpoena is issued.").

Based upon the foregoing, the court should grant the government's motion and summarily deny the petitioner's amended petition to quash the IRS summonses at issue.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the plaintiff's motion to strike (doc. 100) is denied. Furthermore, this court recommends that the United States' motion for summary denial of the amended petition to quash (doc. 94) be granted.

s/ Kevin F. McDonald

                          United States Magistrate Judge

September 9, 2011
Greenville, South Carolina